UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------X
JCDECAUX AIRPORT, INC. and MIAMI
AIRPORT CONCESSION LLC,

         Plaintiffs,

    - against -          **MEMORANDUM AND ORDER**

TOM SAWYER PRODUCTIONS, INC.       16 Civ. 5067 (NRB)
d/b/a TOM SAWYER COMPANY,
INTERACTIVE AIRPORT ADVERTISING,
LLC, and CAROLYN SAWYER,

         Defendants.
--------------------------------X
**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

     This is a straight-forward collection case brought by
plaintiff JCDecaux Airport, Inc. ("JCDecaux") against defendants
Tom Sawyer Productions, Inc. ("Tom Sawyer Company"), Interactive
Airport Advertising LLC ("Interactive"), and Carolyn Sawyer
("Sawyer") in 2016, asserting, <u>inter alia</u>, a breach of contract
claim against all defendants, and breach of fiduciary duty and
conversion claims against Sawyer. Despite the age of this case,
which was filed on June 28, 2016, the parties have made only
minimal progress toward resolution. Now before the Court is
plaintiffs' motion for sanctions under Federal Rule of Civil
Procedure 37(b)(2). For the following reasons, plaintiffs' motion
is granted in part and denied in part.

## I.  **Background**

A.  **Origin of the Case**

This lawsuit arises from a number of subcontractor agreements plaintiff JCDecaux and defendant Tom Sawyer Company entered in 2011 and 2013.  Under the agreements, Tom Sawyer Company would serve as a subcontractor for JCDecaux in selling advertising space in airports and transfer the proceeds from those sales to JCDecaux in accordance with the terms of the agreements.  JCDecaux commenced this action by filing a complaint on June 28, 2016.  See ECF No. 1. The answer to the complaint was not filed until January 24, 2017, approximately five months after the case was filed.  See ECF No. 18.[1]

In answering to JCDecaux's complaint, defendants contemporaneously asserted a counterclaim against plaintiff JCDecaux and proposed third-party defendant Miami Airport Concession LLC ("MAC"), alleging that JCDecaux cancelled the subcontractor agreements without a proper basis and caused MAC to cancel its contracts with defendants.  See ECF No. 18.[2]  Rather

---

[1]  This gap resulted from the difficulties plaintiffs' counsel encountered in effecting service.  Despite being in regular contact with defendants, their then counsel refused to accept service on behalf of defendants, maintaining that he was not authorized to do so.  See Chattoraj Decl. ¶ 5.  As a consequence, plaintiff had to make an application for an extension of time to serve defendants, see ECF No. 8, and another application for the Court's permission to serve defendants through alternative means, approximately four months after the complaint was filed.  See ECF No. 10.

[2]  Defendants' pleading infirmities with respect to MAC, namely seeking to assert a counterclaim against a non-party, were mooted by JCDecaux's decision to join MAC as a co-plaintiff in its amended complaint.

than answering defendants' counterclaim, JCDecaux, now joined by Miami Airport Concession LLC ("MAC") as a co-plaintiff, filed an amended complaint on February 14, 2017 ("Amended Complaint"). See ECF No. 20. Consistent with the initial complaint, the Amended Complaint alleged that defendant Tom Sawyer Company failed to make payments in accordance with the subcontractor agreements between the parties. See ECF No. 20. In addition, plaintiffs alleged that defendant Carolyn Sawyer—the principal of Tom Sawyer Company—misappropriated some of the payments from the Company's clients. Id. Plaintiffs further alleged that Interactive and Sawyer were alter-egos of Tom Sawyer Company. Id. Defendants answered the Amended Complaint on March 20, 2017 and included a counterclaim against both plaintiffs. See ECF No. 26. In their answer, defendants admitted that they had breached the subcontractor agreements at issue. See ECF No. 20 ¶¶ 35-36; ECF No. 26 ¶¶ 35-36. Given the straight-forward nature of claims asserted in this action and admission of breach by defendants, at the initial pretrial conference on April 27, 2017, the Court directed the parties to engage in settlement discussions. See ECF No. 28. However, on May 1, 2017, defendants amended their answer to the Amended Complaint, withdrawing their admission of breach. See ECF No. 31. Eventually, on September 1, 2017, plaintiffs filed a letter, reporting that the parties' settlement discussions had failed and asking the Court to hold a conference to set discovery

schedule, which the Court did on September 18, 2017. <u>See</u> ECF No.
37.

B. **Discovery History**

Throughout the following discussion on the history of
discovery in this case, it is important to keep in mind that the
disclosures necessary to resolve the issues raised in the Amended
Complaint and counterclaim are straightforward: the subcontractor
agreements between JCDecaux and defendants, the defendants' books
and records, the agreements memorializing defendants' sale of
advertising space to their clients, the payments made to defendants
on those sale agreements, and the records of the disbursement of
those payments.

As directed by the Court during a teleconference on September
18, 2017, the parties submitted a joint discovery schedule on
October 13, 2017, which was endorsed by the Court on October 16,
2017 ("Scheduling Order"). <u>See</u> ECF Nos. 39, 40. The Scheduling
Order provided that the parties should complete production of Rule
26 initial disclosures within 30 days of the Order. <u>See</u> ECF No.
40. Defendants, however, failed to produce their initial
disclosures within the allotted 30 days. Chattoraj Decl. (ECF No.
63) ¶ 17. Pursuant to the Scheduling Order, plaintiffs served
their First Requests for Production of Documents on December 6,
2017. <u>Id.</u> at ¶ 18. Defendants objected to some of those Requests

4

on January 8, 2018 but, more significantly, did not produce any documents responsive to unobjected requests. Id. at ¶¶ 18-20.

Faced with defendants' noncompliance with their discovery obligations, plaintiffs filed a letter on February 23, 2018, seeking leave to file a motion to compel. See ECF No. 43. In response, the Court held a conference on March 1, 2018, see ECF No. 44, at which the Court advised defense counsel about the potential consequences defendants' continued noncompliance with legitimate discovery obligations might bring. Per the Court's direction during the conference, the parties submitted a stipulation setting April 4, 2018 as the deadline for defendants to satisfy the outstanding discovery demands ("Discovery Stipulation"). Id. In endorsing the Discovery Stipulation, the Court permitted plaintiffs to file a motion for default judgment and other sanctions against defendants without a pre-motion conference if they failed to meet the April 4, 2018 deadline. Id. Defendants finally produced some documents and responded to the plaintiffs' interrogatories on April 4, 2018. Chattoraj Decl. ¶ 27. It is worth special emphasis that this production contained defendants' Rule 26 disclosures and was made three months shy of the 2-year anniversary of this case despite the absence of any stay or pre-discovery motion practice.

In reviewing the defendants' production, however, plaintiffs noticed multiple deficiencies. Id. Although plaintiffs' numerous

efforts to engage with defendants failed to result in a satisfactory resolution of those deficiencies, id. at ¶¶ 30-32, for the reasons that are difficult to understand, plaintiffs' counsel did not press as vigorously as he might to bring the discovery issue to a head. Rather, plaintiffs simply kept offering to continue to work with defense counsel to resolve discovery disputes without seeking the Court's assistance to compel defendants to satisfy their discovery obligations. See ECF Nos. 47, 48, 50. In retrospect, perhaps the Court should have proactively intervened even when its assistance was not sought. However, at bottom, prosecution of a case is the responsibility of parties, and there is no question that the Court responded promptly to every request for intervention.

Eventually, on March 1, 2019, plaintiffs submitted another letter to the Court, asking for a conference to address the discovery disputes. See ECF No. 52. Following an exchange of letters between the parties on the issues raised by plaintiffs, see ECF Nos. 53-56, the Court issued an order on May 22, 2019 ("Discovery Order"), stating:

> The Court has reviewed the parties' recent exchange of letters. See ECF Nos. 52-56. Having concluded that plaintiff's discovery requests conform to Rule 26 of the Federal Rules of Civil Procedure, and further that defendants have not advanced any valid objection to those requests, it is hereby ordered that defendants shall produce all responsive documents within twenty (20) days of this order. If there are no responsive documents to a given

request, defendants shall furnish an affidavit to
that effect.

See ECF No. 57.  The deadline for compliance was June 11, 2019.

C.  **Current Motion for Sanctions**

Consistent with their record of delay, defendants neither produced any document nor submitted an affidavit as directed in the Discovery Order.  See Chattoraj Decl. ¶ 36.  Defendants' failure to comply with the Discovery Order finally led plaintiffs to file a pre-motion letter on June 27, 2019, proposing a motion for sanctions under Federal Rule of Civil Procedure 37.  See ECF No. 58.  The Court held a pre-motion conference on July 15, 2019 and allowed plaintiffs to make the proposed motion.  See ECF No. 59.

Notwithstanding the Court's approval, plaintiffs' counsel had failed to file a motion for two months.  To prevent any further unjustified delay in this case, the Court reached out to the parties and held a teleconference on September 10, 2019 to confirm a briefing schedule for this motion.  Plaintiffs finally filed this motion for sanctions on September 16, 2019.  See ECF No. 61. Pursuant to the briefing schedule set during the September 10, 2019 teleconference, defendants' opposition was due on September 30, 2019.  True to form, defendants failed to file any submission by that date.  Nonetheless, plaintiffs filed a reply on October 7, 2019, the scheduled due date for reply submission.  See ECF No.

65.  Later that day, seven days past the deadline, defendants submitted a letter, asking for an extension of time to file their opposition.  See ECF No. 66.  Defense counsel cited his mistaken belief as to the briefing schedule and internal communication errors within his office as the reasons for failing to file the opposition on time.[3]  Id.  The Court granted the request, and defendants filed their opposition on October 14, 2019.[4]  See ECF No. 68.  In that belated opposition, Sawyer finally certified that "[she has] now searched through all accessible records and simply [is] not able to provide any additional responsive documents." Sawyer Decl. (ECF No. 68-1) ¶ 4.  Plaintiffs filed another reply on October 21, 2019.  See ECF No. 70.

In this motion, plaintiffs ask the Court to impose the following sanctions on defendants: (1) entry of a default judgment, at least on the alter-ego claim against Sawyer; (2) dismissal of defendants' counterclaim; (3) attorneys' fees and costs incurred in connection with this motion; and (4) entry of an order precluding defendants from introducing and relying on any further

_____

[3]     Obviously, it is difficult, if not impossible, to justify any confusion about the briefing schedule because it was set during a teleconference with the Court, in which defense counsel participated.

[4]     Defendants' belated opposition consisted of two affidavits, one by defense counsel and the other by defendant Sawyer, that totaled only 6 pages and were devoid of any citation to legal authorities.  See ECF No. 68. Defendants' failure to submit those affidavits on time, i.e. within 14 days after plaintiffs filed their motion, was only the most recent example of defendants' less than serious approach to this litigation and court deadlines. Although the Court granted defendants' request to submit untimely oppositions, see ECF No. 68, this incident has further convinced the Court that stiff sanctions are warranted.

evidence, including the testimony of Sawyer if she fails to appear for a deposition by certain date. <u>See</u> ECF No. 64 at 3.

## II. <u>Discussion</u>

### A. **Legal Standard: Federal Rule of Civil Procedure 37**

Federal Rule of Civil Procedure 37(b)(2) provides that a court may impose sanctions against a party that "fails to obey an order to provide or permit discovery." <u>Salahuddin v. Harris</u>, 782 F.2d 1127, 1132-33 (2d Cir. 1986). The decision to impose sanctions under Rule 37 "is committed to the sound discretion of the district court." <u>Luft v. Crown Publishers, Inc.</u>, 906 F.2d 862, 865 (2d Cir. 1990). Because "Rule 37 permits the imposition of 'just' sanctions[,] the severity of sanction must be commensurate with the non-compliance." <u>Shcherbakovskiy v. Da Capo Al Fine, Ltd.</u>, 490 F.3d 130, 140 (2d Cir. 2007). In imposing sanctions under Rule 37, a court may consider various factors, including: "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance; and (4) whether the non-compliant party had been warned of the consequences of noncompliance." <u>Funk v. Belneftekhim</u>, 861 F.3d 354, 366 (2d Cir. 2017).

B.   **Analysis**

    1.   <u>Entry of Default Judgment and Dismissal of Counterclaim</u>

Federal Rules of Civil Procedure 37(b)(2)(A)(v) and (vi) contemplate dismissal of claims and entry of default judgment as possible sanctions for noncompliance with a court's discovery order.  However, "[d]ismissal or default imposed pursuant to Rule 37 is a drastic remedy generally to be used only when the district judge has considered lesser alternatives."  <u>Southern New England Telephone Co. v. Global NAPs Inc.</u>, 624 F.3d 123, 144 (2d Cir. 2010).

We consider each of the prescribed factors in determining whether entry of the default judgment sought by plaintiffs is appropriate here.  Addressing willfulness first, both defense counsel and defendant Sawyer claim that there has been a good-faith effort to comply to the extent practicable under the Sawyer's circumstances, including that she is currently the sole employee at Tom Sawyer Company.  The Court totally rejects the proffered excuse as constituting a good-faith explanation.  While reduced staff could justify a delay in production, it cannot support the length of delay here.  The proffered excuse also has to be considered in context.  Considering the entirety of this litigation, it is a fact that there has been not even one example of timely and full compliance by defendants with a discovery

schedule or any other directive of the Court.  Most striking is

defendants' failure to timely submit an affidavit certifying the

completion of production, as directed in the Discovery Order.

Defendants had been afforded more than a year and half to search

through their records prior to the entry of the Discovery Order.

Further, rather than seeking an extension, defendants just blew

through the deadline.  Also worthy of mention is the basic nature

of documents requested by plaintiffs: the business records that

any company should have maintained in the ordinary course of its

operation.[5]

The third factor also weighs strongly in favor of granting

the sought after default judgment.  The record establishes that,

from the outset of this case, defendants have continuously engaged

with dilatory behaviors and pushed the Federal Rules of Civil

Procedure and the civility afforded by plaintiffs and the Court

to, if not over, the edge.  Furthermore, the record of this case,

commencing with defendants' failure to comply with the initial

Scheduling Order of October 16, 2017, unambiguously shows that

there has been not even a single instance of defendants meeting a

deadline imposed either by the Federal Rules of Civil Procedure or

the Court's orders.  In other words, noncompliance with discovery

deadlines simply has been a pattern in defendants' conduct

---

[5]     Clearly, given the nature of plaintiffs' claims that defendants
diverted monies received from subcontracts, the absence of records may well
result in the drawing of adverse inferences in further proceedings of this case.

throughout this litigation. Defendants' failure to comply with
the Discovery Order is simply the most recent manifestation of
defendants' evasive attitude toward this action. Noncompliance
with the Discovery Order persisted for approximately four months—
between June 11, 2019 (the deadline imposed by the Discovery Order)
and October 14, 2019 (the date defendant Sawyer submitted a
declaration in opposition to this motion that contained a
certification of complete production). It is striking that,
despite the in-person conference on July 15, 2019, at which the
plaintiffs' proposed (and now pending) motion for sanctions was
discussed and authorized, defendants made no effort to bring
themselves into compliance until they submitted their untimely
opposition.

The fourth factor also weighs in favor of granting plaintiffs
the sought default judgment. While there is no written order
specifically advising defendants that their failure to comply with
the Discovery Order might result in an entry of default judgment,
there is no doubt in the Court's mind that defendants were well-
aware that entry of default would be a possible consequence of
their failure to comply with their discovery obligations.
Specifically, at the March 1, 2018 conference, which followed
plaintiffs' request for leave to file a motion to compel, the Court
warned defense counsel that, unless defendants satisfied then
outstanding discovery demands within 30 days, the Court would allow

plaintiffs to move for a default judgment as a discovery sanction. Moreover, in endorsing the Discovery Stipulation, the Court granted plaintiffs permission to move for default judgment as a Rule 37 sanction if defendants failed to satisfy then outstanding discovery demands by the date specified therein. See ECF No. 44. Lastly, during the conference of July 15, 2019, which was a pre-motion conference for this motion for sanctions, the Court raised the entry of default judgment as a possible outcome of this motion. See ECF No. 59 at 15. Under the totality of the circumstances, the Court concludes without much difficulty that defendants have received ample warning of the possible sanctions of default judgment.

The second factor also weighs in favor of granting plaintiffs the sought default judgment. Based on the history of defendants' repeated noncompliance with discovery deadlines and the Court's directives, it is obvious to the Court that any lesser sanction would be "an exercise in futility." Koch v. Rodenstock, 06 Civ. 6586(BSJ)(DF), 2010 WL 2010892, at *7 (S.D.N.Y. Apr. 23, 2010)(Report & Recommendation)(citation omitted), adopted by 2010 WL 2010900 (S.D.N.Y. May 18, 2010). In sum, consideration of the prescribed factors indicates that an entry of default judgment under Rule 37 is warranted here.

However, even after concluding that an entry of default judgment is appropriate under Rule 37, the Court "must [still]

13

follow the procedure for entry of a default judgment as set forth in Rule 55." Coach, Inc. v. O'Brien, 10 Civ. 6071(JPO), 2012 WL 1255276, at *8 (S.D.N.Y. Apr. 13, 2012). This is because, unless a party's pleading states a claim and contains sufficient allegations to support the entry of a default judgment in the Rule 55 context, awarding a default judgment as a sanction would be excessive and would violate the basic rule of proportionate sanctioning. Federal Rule of Civil Procedure 55(b)(2), which governs entry of a default judgment, requires a complaint to contain sufficient factual allegations to state a claim before a default judgment may be entered. See Taizhou Zhongneng Import and Export Co., Ltd. v. Koutsobinas, 509 F.App'x 54, 58 (2d Cir. 2013) ("Because the well-pleaded allegations in [plaintiff's] complaint do not state a claim against [defendant], a default judgment should not have been entered against him in the first place."). After a careful review of the Amended Complaint, we have concluded that it does not contain sufficient factual allegations to serve as a predicate for the sought after alter-ego finding against defendant Sawyer. Therefore, we decline to enter a default judgment against defendants.[6]

---

[6] It may be, however, that the deposition of Sawyer, which we order below, may yield sufficient evidence to support the alter-ego claim. If not, the Court will be receptive to plaintiffs' application for entry of a default judgment solely on their breach of contract claims against Tom Sawyer Company, leaving the piercing issue to supplemental proceedings in the context of judgment collection.

We now turn to the plaintiffs' request for dismissal of defendants' counterclaim. Whether the counterclaim should be dismissed may be considered from two perspectives: first, as a discovery sanction and second, for failure to prosecute. From either perspective, the result is the same: dismissal.[7] Each of the Rule 37 sanction factors support dismissal. We have already found that defendants' failure to be willful, the duration of noncompliance with various discovery orders lengthy without any prompt remedial effort, and any lesser sanctions to be an exercise in futility. The notice factor also weighs in favor of granting dismissal. Although the Court's warnings during the conferences

---

[7]     Under Federal Rule of Civil Procedure 41(b), the Court may dismiss a claim for plaintiff's failure to prosecute or comply with the Court's order. In deciding whether to dismiss a claim under Rule 41(b), the Court may consider the following factors:

> (1) the duration of the plaintiff's failures; (2) whether plaintiff had received notice that further delays would result in dismissal; (3) whether the defendant is likely to be prejudiced by further delay; (4) whether the district judge has taken care to strike the balance between alleviating court calendar congestion and protecting a party's right to due process and a fair chance to be heard; and (5) whether the judge has adequately assessed the efficacy of lesser sanctions.

Martens v. Thomann, 273 F.3d 159, 180 (2d Cir. 2001). Despite that this motion is a motion for sanctions under Rule 37, the Court may still consider the Rule 41(b) factors in deciding whether to grant dismissal of counterclaim as a sanction under Rule 37. See Banjo v. U.S., 95 Civ. 633(DLC), 1996 WL 426364, at *5 (S.D.N.Y. Jul. 30, 1996) ("Although Rule 41(b), Fed. R. Civ. P., governs dismissals based on plaintiff's failure to prosecute, it is appropriate to be guided by those factors which courts consider before dismissing a case under Rule 41(b) prior to dismissing the case under Rule 37."). Moreover, that the motion before the Court is one under Rule 37 does not preclude it from considering dismissal under Rule 41(b). See Lyell Theatre Corp. v. Loews Corp., 682 F.2d 37, 41–42 (2d Cir. 1982). Although we do not separately address in this opinion the application of Rule 41(b) factors to this case, we believe that our discussion about Rule 37 factors provides a sufficient basis for our conclusion that each of Rule 41(b) factors also weighs in favor of dismissing the counterclaim.

mentioned above only referred to "default judgment" generally, such warnings should have put defendants on notice that their counterclaim could be dismissed as a sanction because dismissal of their counterclaim with prejudice is the substantive equivalent of an entry of default judgment for plaintiffs on their counterclaim. Simply put, for essentially the same reasons that we concluded that an entry of default judgment could be available as a sanction under the facts of this case, we conclude that the sanction of dismissing defendants' counterclaim is available as well.

Moreover, our conclusion is buttressed by the fact that defendants have taken no affirmative steps to prosecute their counterclaim and, as such, it may be dismissed under Federal Rule of Civil Procedure 41(b) as well. Defendants' limited and less than candid responses to plaintiffs' First Set of Interrogatories are instructive. In those Interrogatories, which was served on defendants on January 8, 2018, plaintiffs asked defendants to "[p]rovide a computation for each type or category of damages [d]efendants seek in their 'First Counterclaim,' filed on or about May 1, 2017 in this action." Chattoraj Decl., Ex. F, ¶ 1. In answering[8] this question, defendants rather conveniently stated "[p]rovided in response to document requests and as part of initial

---

[8] Despite the fact that responses to the interrogatories were due February 7, 2018, Fed. R. Civ. P. 33(b)(2), defendants only answered the plaintiffs' interrogatories on April 4, 2018 after the Court intervened and even then not under oath as required. Id.

16

disclosures." Id., Ex. I, ¶ 1. However, contrary to this response, defendants now confess that the damages they asserted in their counterclaim are "nearly exclusively based on" the conversations between Ms. Sawyer and Bovet—purportedly, the biggest client of Tom Sawyer Company—and those conversations "were not memorialized in writing," suggesting that no document could ever have been produced to substantiate their assertion of damages for the counterclaim. Hanschke Decl. (ECF No. 68) ¶ 6. Additionally, in the same interrogatories, plaintiffs asked defendants to "[i]dentify all witnesses with knowledge of information relevant to Defendants' First Counterclaim." Chattoraj Decl., Ex. F, ¶ 10. Despite defendants answered "Kathy McHenry," id., Ex. I, ¶ 10, nothing in the record suggests that defendants even attempted to depose McHenry for constructing evidentiary basis to support their counterclaim.[9]

Under the circumstances, not granting dismissal of the counterclaim as a sanction against defendants would incentivize future litigants to assert claims even when they are not serious about prosecuting them and consequently ignore their discovery

---

[9]  In her affidavit in opposition to this motion, defense counsel states that defendant Sawyer stands ready to be deposed about what defendants are alleging in their counterclaim. See Hanschke Decl. ¶ 8. This is simply too little, too late. A notice of deposition to Sawyer was served on February 9, 2018. See ECF No. 44. The Court adjourned the notice in the Discovery Stipulation but did so only based on an understanding that the parties would reschedule Sawyer deposition in a timely manner. Id. Moreover, even under the most recently endorsed discovery schedule, Sawyer deposition was supposed to be completed by October 26, 2018. See ECF No. 46, ¶ 5.

obligations under the Federal Rules of Civil Procedure and the court's orders.

Upon due consideration of all relevant facts and circumstances surrounding the history of discovery in this case, the Court dismisses defendants' counterclaim with prejudice as a sanction under Rule 37 and, alternatively, pursuant to Rule 41(b).

### 2. Preclusion from Introducing Additional Evidence

Plaintiffs also seek an order precluding defendants from introducing and relying on any evidence that has not already been produced. As discussed above, in the opposition papers on this motion, Sawyer finally certifies that "[she has] now searched through all accessible records and simply [is] not able to provide any additional responsive documents." Sawyer Decl. (ECF No. 68-1) ¶ 4. Through this certification, defendants effectively concede that the requested order, if granted, would not cause defendants any prejudice. Therefore, the requested and warranted preclusion order is granted.

### 3. Deposition of Defendant Sawyer

In this motion, plaintiffs also request an order requiring defendant Sawyer to appear for a deposition by a date certain and, should she fail to appear, precluding defendants from relying on her testimony in any manner. In her declaration, Sawyer states that she will appear for a deposition. Sawyer Decl. ¶ 26. Therefore, the Court directs plaintiffs to propose three (3) dates

18

on or before February 28, 2020 for deposing Sawyer, and Sawyer shall select one of those dates. The parties shall inform the Court of the date for Sawyer's deposition within five (5) days of this Memorandum and Order.

### 4. Attorneys' Fees and Costs

Federal Rule of Civil Procedure 37(b)(2)(C) provides that a court "must" award the movants' expenses, including the attorneys' fees, as sanctions under Rule 37 unless the non-movants' noncompliance was "substantially justified or other circumstances make an award of expenses unjust." "Although the Second Circuit has never explicitly held that the payment of expenses pursuant to Rule 37(b)(2)(C) is mandatory, the burden is on the violator to show that there was a substantial justification for the violation, or that circumstances would make it unjust to award reasonable expenses to the moving party." In re Doria/Memon Discount Stores Wage & Hour Litig., 14 Civ. 7990(RWS), 2018 WL 1353261, at *5 (S.D.N.Y. Mar. 15, 2018).

Defendants limit their justification efforts to noncompliance with the Discovery Order, which is just the most recent one among numerous discovery orders which defendants defied. First, defendants claim a reluctance to attest to full production, and second, defendants claim a lack of resources. As discussed, neither position withstands even a cursory analysis. What is wholly missing from defendants' effort to justify their

noncompliance is an acknowledgment that they have been non-compliant for years. The first discovery order was entered on October 16, 2017. See ECF No. 40. The fact is that plaintiffs and the Court have been chasing defendants ever since. Under the circumstances, the Court finds no substantial justification of the defendants' failures and concludes that awarding plaintiffs the attorneys' fees and costs is not unjust.

Under all the facts and circumstances made known to the Court during the prolonged tenure of this action and upon a thorough review of the parties' submissions for this motion, the Court concludes that an award of $ 12,500, inclusive of the attorneys' fees and costs, is appropriate here.

## III.   Conclusion

For the foregoing reasons, plaintiffs' motion for sanctions is granted in part and denied in part. The defendants' counterclaim is dismissed with prejudice as a sanction under Federal Rule of Civil Procedure 37(b)(2) and pursuant to Federal Rule of Civil Procedure 41(b). As discussed above, the parties are directed to inform the Court of the date for Sawyer's deposition within five (5) days. Defendants are further directed to pay plaintiffs the sum of $ 12,500 within thirty (30) days. This Memorandum and Order resolves ECF Docket Entry No. 61.

Given this extensive opinion, the Court trusts that defendants and their counsel are cognizant of the severe consequences that any failure to fully comply with the directions in this opinion would bring.

**SO ORDERED.**

Dated:    New York, New York
          February _11_, 2020

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE